1       IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2

UNITED STATES OF AMERICA        :

3                               :   Case Number
            vs.                 :   1:09-CR-00217

4                               :   (Chief Judge Kane)
RUBIK AVETYAN, ALLEN AVETYAN, :

5 and ALFRED AVETYAN,           :
            Defendants          :

6

7                   TRANSCRIPT OF PROCEEDINGS
                     IN RE:   SENTENCINGS

8

        Before:  HONORABLE YVETTE KANE, Chief Judge

9

        Date  :  March 4, 2011; 11:00 a.m.

10

        Place :  Courtroom Number 4, 8th Floor

11               Federal Building
                 228 Walnut Street

12               Harrisburg, Pennsylvania

13

COUNSEL PRESENT:

14

     UNITED STATES ATTORNEY'S OFFICE

15   BY:  AMY PHILLIPS, ASSISTANT U.S. ATTORNEY

16       For - Government

17   KAPLAN, KENEGOS & KADIN
     BY:  JERRY KAPLAN, ESQ.

18

         For - Defendants Rubik Avetyan and Alfred Avetyan

19

     GUROVICH, BERK & ASSOCIATES

20   BY:  ELON BERK, ESQ.

21       For - Defendant Allen Avetyan

22

ALSO PRESENT:

23

     CRYSTAL BARD, U.S. PROBATION OFFICER

24   GEORGE ESAYAN, INTERPRETER

25                       Lori A. Shuey, RMR, CRR
                         U.S. Official Court Reporter

1        THE COURT:  Good morning.  Who is here for the

2  Government?

3        MS. PHILLIPS:  Amy Phillips, Your Honor, from the

4  Scranton office.

5        THE COURT:  All right.  For defendant?

6        MR. KAPLAN:  Jerry Kaplan appearing on behalf of

7  Alfred Avetyan -- and I'm not sure which one we're calling

8  first -- and Jerry Kaplan appearing for Leo Fasen on behalf of

9  Rubik Avetyan.  But I understood the interpreter is going to be

10  late, so you're to call Alfred first.  Correct?

11        THE COURT:  Correct.

12        MR. KAPLAN:  So then I'm going to be appearing for

13  Alfred Avetyan.

14        THE COURT:  All right.  Great.  Counsel, do you

15  anticipate witnesses on the case of Alfred Avetyan?

16        MS. PHILLIPS:  I do not, Your Honor.  I've had

17  discussions with the defense in all three cases.  The only

18  objection that we would have placed testimony on the record

19  would relate to the number of victims, and I believe that the

20  parties are willing to agree that the number of victims is

21  greater than 50.

22        THE COURT:  Is that so, Counsel?

23        MR. KAPLAN:  Yes.

24        THE COURT:  All right.  There was, attached to the

25  presentence report, a list of victims and restitution amounts.

1  Mr. Kaplan, do you have that?

2  　　　　MR. KAPLAN:  Well, I have a new list that they have

3  just -- they've given me a new list that is different than the

4  old list because there are ten less.  We're down to 115 from

5  165.  So therefore I have their new list, which I think is

6  different than their old list.

7  　　　　MS. PHILLIPS:  Actually, Your Honor, the list that I

8  prepared today was in anticipation of the objection.  I had

9  asked the agent to prepare a list of the information that was

10  part of the investigation.

11  　　　　I don't believe there is going to be a change in the

12  restitution amount because there are victims that are listed

13  within the presentence investigation that do not have a loss.

14  So those victims who do not claim a loss I believe are

15  accurately reflected on the list that is attached as Exhibit A

16  to the PSR.

17  　　　　MR. KAPLAN:  I'm somewhat confused.  The ones that

18  don't show a loss, it's hard for -- I don't know why they're

19  victims, but I'm not going to argue with it because there's

20  still more than 50 whether they showed a loss or not, Your

21  Honor.  And I guess the reason for your question is for the

22  restitution amount or for the loss amount?

23  　　　　THE COURT:  For the restitution amount.

24  　　　　MR. KAPLAN:  Well, we agreed that the restitution

25  amount -- I believe their current list is accurate as to the

1    restitution amount.  That's what they said they have verified.

2    I haven't unverified it.  They prepared it for this hearing,

3    and I am willing to agree to that.

4            THE COURT:  All right.  Counsel, the Exhibit A that's

5    appended to the presentence report --

6            MS. PHILLIPS:  Yes, Your Honor.

7            THE COURT:  -- do you have that?

8            MS. PHILLIPS:  I do.

9            THE COURT:  How has that been modified?

10           MS. PHILLIPS:  It has not been modified, Your Honor.

11   That remains the same.

12           THE COURT:  Okay.

13           MS. PHILLIPS:  The issue with respect to the number of

14   victims, in preparing for the objection, I was unsure as to

15   what victim specifically counsel was objecting to.  I asked the

16   agent to make a list of those victims who made specific claims

17   and those who did not claim a loss whatsoever.

18           In doing so, I believe we came up with a list of one

19   hundred and -- I'm sorry, ten people with respect to the list

20   that was made by the agent did not claim a loss, although I

21   note from the PSR that these victims are also listed, but there

22   is no loss attributed to them for the purpose of restitution on

23   Exhibit A.

24           THE COURT:  And why is that?

25           MS. PHILLIPS:  They were believed to be victims;

however, they did not claim a loss with respect to the questionnaire that was sent by the United States Postal Inspection Service preliminarily, prior to turning the list over to probation.

THE COURT: Ms. Bard, do you know why?

PROBATION OFFICER: Your Honor, my understanding from speaking with the case agent is that some individuals or companies detected the scam before they actually were out money; however, they were still considered victims at that point and we were attempting to verify if there was an actual loss.

So they were notified as victims, but because they either detected it or didn't make payment for whatever reason, the loss did not actually come out of their pockets.

THE COURT: In what sense were they victims then?

MS. PHILLIPS: Your Honor, I may be able to clarify that. The list was generated through the postal inspection agent's review of the mail that was contained in the mailbox. So originally those people were believed to be victims.

In any event, those people all had contracted with the fraudulent company or the company that was operating fraudulently for the service, whether it was shipping or brokering loads. So those people, we would submit, are all victims, although several of the victims may not have sustained a loss due to the fact that they stopped payment or stopped

shipment upon learning of the fraud.  And that is, I believe, to be approximately ten companies.

THE COURT:  So, Mr. Kaplan, you agree that there are 115 victims?

MR. KAPLAN:  I agree there's more than 50.  I haven't looked at the other 65, but I'm not arguing with their restitution amount, and I'm not arguing with their number of victims of 115.

THE COURT:  Okay.

MR. KAPLAN:  I mean, it doesn't behoove -- I don't think it changes it.

THE COURT:  No, it doesn't.

MR. KAPLAN:  It ain't gonna help anything, and I just don't think it's of any moment.

THE COURT:  No.  But I agree with you that it's a fair question as to how a person who suffered no loss is a victim, and I have the same question.

MR. KAPLAN:  All right.

THE COURT:  But you're right, it's interesting and it might be worth talking about but not in the context of this case because it won't matter.

MR. KAPLAN:  Exactly.  And not that us lawyers don't like to hammer moot problems all the time, but I think that in this particular case, having flown all night, I just as soon not.

1    THE COURT:  Okay.  So we agree that the amount of
2    restitution is $1,118,723.26?

3    MR. KAPLAN:  Yes.

4    THE COURT:  Okay.

5    MS. PHILLIPS:  Yes, Your Honor.

6    THE COURT:  That's what matters.  All right.  Are
7    there other objections that we need to resolve at this point?

8    MR. KAPLAN:  Having not been in Harrisburg before and
9    I -- do you want me to stand here or there?

10    THE COURT:  Actually, we usually have counsel
11    approach.  And the lawyer on the other side is not a regular
12    here, either.  We usually have you, your client, come up here
13    to the bar.

14    MR. KAPLAN:  All right.  I didn't know how we were
15    going to do this.  I apologize.  Going into the well in our
16    neck of the woods is not cool.

17    THE COURT:  I don't know that they do it this way in
18    Scranton, either, but this is, for whatever reason, how we do
19    it in Harrisburg.

20    MR. KAPLAN:  Having not been in Harrisburg and having
21    been in a lot of federal courts around the country, I might
22    note that I'm not sure how we're going to handle these
23    objections now that they're not mandatory and they're advisory.

24    As far as we're concerned, we agreed with the loss
25    amount under a million in the plea agreement, and different

1    courts have a different way of approaching that issue, as well.

2    And assuming that this Court approaches it -- how am I going to

3    say this -- which I would hope that you would agree to the

4    stipulation notwithstanding that the restitution amount is

5    higher, and if you're going to go with the 14 points on that, I

6    don't think I need to argue that.  And I'm not sure how this

7    Court approaches that.  Most courts go with the stipulation

8    these days.  And so I would -- if you don't want to give me any

9    guidance on that --

10        THE COURT:  No, so there's still an outstanding

11   objection is what you're telling me.  You agree to the

12   restitution, but you don't agree to the probation officer's

13   assessment of points because you believe that the Government is

14   bound by the plea agreement to an amount less than $1 million.

15        MR. KAPLAN:  Yes.

16        THE COURT:  Okay.  The Government has filed with the

17   Court a response to your objections and maintains that the

18   proper calculation is the one offered by the probation

19   department.  Is that right?

20        MS. PHILLIPS:  That is correct, Your Honor.

21        THE COURT:  Okay.  So at this point, if either side

22   wants to offer any testimony --

23        MR. KAPLAN:  I don't.

24        THE COURT:  -- or other evidence on that, I will hear

25   it.  But having heard what counsel have represented heretofore,

1  that the amount of the restitution is in excess of $1 million,

2  I don't find any reason not to accept the assessment of the

3  probation office.  Is there something that I'm missing here?

4      MR. KAPLAN:  Not at all.

5      THE COURT:  Okay.

6      MR. KAPLAN:  I mean, like I indicated, the Government

7  argued in their response that you should accept the 14 points

8  rather than the 16 points, even though it might be higher.  And

9  I understand the Court doesn't need to take into account our

10  agreement, and I hear the Court.

11      THE COURT:  Okay.

12      MR. KAPLAN:  I don't have any facts to back up my

13  argument.

14      THE COURT:  Well, I take the view that it's the

15  Government's burden, but one of the most important items in

16  assessing whether the Government has met that burden -- and the

17  threshold determination that I make is what the defendant

18  admits to, and in this case the defendant admitted to more than

19  $1 million in loss, so I can't find any basis for rejecting the

20  assessment in Paragraph 33 that it is a 16-point increase that

21  is appropriate under all the circumstances.

22      MR. KAPLAN:  All right.  We admitted to under a

23  million loss at the time of the plea.  After that we realized

24  it was over a million, and we're not arguing with it because we

25  don't think it behooves us to do so, number one, and we think

1    they're probably right, number two.

2         THE COURT:  Okay.

3         MR. KAPLAN:  So I submit on that one, though I still

4    think the Court should consider the fact that the Government

5    moves for under a million, as well as we do.  But I'll argue

6    that in the 3353(a) factors and not in the guideline factors,

7    if I may.

8         THE COURT:  Okay.  Are there other outstanding

9    objections?

10        MR. KAPLAN:  The only other two objections that we

11   made, and we made them tacitly, were whether it's a

12   sophisticated means, that's a call by this Court, and I think

13   the identity is -- definitely I don't win that one, so I'm

14   caving on that one.  And I'm not arguing strongly on the

15   sophisticated -- I don't think I objected to the sophisticated

16   means.  I take that back.

17        THE COURT:  Okay.  My assessment of facts is that the

18   evaluation of the probation office is correct in that it is --

19        MR. KAPLAN:  A 27.

20        THE COURT:  -- sophisticated.

21        MR. KAPLAN:  All right.  So then we end up with a

22   level 27, if I'm not mistaken, after taking into account three

23   points for admitting wrongdoing.

24        THE COURT:  That is correct, an offense level 27,

25   criminal history category one is our starting place.

1      MR. KAPLAN:  And I believe that's beyond the five

2   years, actually.  I think that's a range of --

3      THE COURT:  I believe it was originally 70 to 87

4   months, and then it's adjusted to 60 months because that's the

5   statutory maximum.  So the guideline range is 60 months.

6      MR. KAPLAN:  All right.  Now, let's talk a little

7   about the -- may I talk about the -- what do we do next?

8      THE COURT:  You may offer anything on your client's

9   behalf that you would like me to hear.

10      MR. KAPLAN:  All right.  What we're doing -- I believe

11   this is the time that we generally argue the 3553(a) factors,

12   and I'm sure the Court has read the letters and has also read

13   the -- our spin of the reasons this all occurred.

14      And I think that, you know, sometimes we take for

15   granted people's desperate needs, and we all have problems.

16   However, in this particular case, having met the wife and

17   knowing she had severe cancer and God intervened and allowed

18   her to survive and -- but it was very expensive to get to the

19   point of surviving.  These people didn't -- it was one of the

20   reasons they did what they did.

21      I mean, there are other reasons, as well.  Let's face

22   it, it was a terrible economy, things were going downhill for

23   the whole family.  They were -- rather than cast aspersions at

24   his brother, the brother took the responsibility, he came up

25   with the scheme, he was involved in drugs, and, you know,

Alfred went down the wrong path.  He admitted his involvement

early.

He's a great kid.  I happen to know that because I've

gotten to know him through this case.  His wife is just an

amazing young lady who brings tears to my eyes with her

strength, her devotion to the family, and her fight that she

survived this.  And then she went and got pregnant when they

said that she'll never have a child and did have a child,

healthy, happy.  I'm a father of five with five grandchildren.

I mean, it's a blessed event when a woman fights off cancer.

And maybe one would say he is very fortunate to have what he

has, this wonderful woman and a child at this point in life.

Having said that -- and I happen to agree with that --

he's a very lucky man, and he did a very bad thing.  And, you

know, the guidelines are there, I guess, for a reason.  On the

other hand, the reason they haven't made them mandatory, or

made them advisory, because we can take the individual

characteristics of an individual, what he has done, why he has

done it, and then take a look at it and say, you know, what is

the proper both punishment for the Government, sending a

message to the community, as well as for this individual?

And I'm asking this Court to have that sentence,

instead of 60 months, make it 30 months.  I believe he should

be punished.  And I think that would send both a message to the

community, a message to him, allow him to make restitution --

1    he's a hard-working young man and the whole family -- and allow

2    him to be with his wife and child.  And so that's what we're

3    asking for.

4          If you want -- I mean, I don't have any other

5    evidence.  I could put on a whole list of relatives that would

6    chorus my opinion, both of the family and this young man and

7    this young child and this unbelievable woman.  And you can see

8    she has moved me dramatically.  And she loves this man very

9    much, and I think it would be helpful for the whole family.  So

10    that's what I would ask the Court for.

11          THE COURT:  All right.  Do you wish to speak on your

12    own behalf?

13          DEFENDANT ALFRED AVETYAN:  Yes.

14          MR. KAPLAN:  He has a statement, Your Honor.

15          DEFENDANT ALFRED AVETYAN:  Dear Honorable Yvette Kane:

16    Thank you for giving me the opportunity to say a few words.

17    Besides the letter I wrote to you, Your Honor, I'm deeply sorry

18    for the pain I have caused to the victims.  I wish they could

19    forgive me.  I have learned a great lesson from this

20    unfortunate situation.  I will not repeat the same mistake

21    ever, ever again or any mistake down the line.

22          I am also sad that I have caused pain to my family,

23    too, especially to my wife who will be left alone to raise our

24    newborn daughter when I am not around.  I know I have done

25    people wrong, and I'm sorry with all my heart.

1          Your Honor, I kindly ask you to please consider the

2     Alfred that I am now and give me a chance to have a new start

3     and be with my family by not serving a very long time.

4          THE COURT:  Thank you.  Ms. Phillips.

5          MS. PHILLIPS:  Thank you, Your Honor.  Certainly I

6     empathize with the health and the illness of the defendant's

7     wife, and this is a case that involves several family members.

8     However, certainly facing a devastating illness and potential

9     medical bills would not justify any type of crime, let alone

10    the sophisticated and serious crime that was committed here.

11         Additionally, I do need to note, based on the

12    representations, that this is not a family who was living in

13    complete poverty.  This is a family with multiple homes, land,

14    I believe 2010 Mercedes automobiles, and I think there were

15    options available to them.  And I just note that for the record

16    from the PSR.

17         With respect to the crime in general, this is a crime

18    that was far-reaching.  The economy, as everyone knows, has

19    been devastating for everyone, and the effect that it had on

20    the victims singularly and as a whole and as an industry has

21    been significantly felt.  And for those reasons, we would ask

22    that the Court sentence the defendant to 60 months.

23         THE COURT:  All right.  What was the original

24    guideline range before the plea agreement?

25         MS. PHILLIPS:  I believe it was 70 to 87.

1          THE COURT:  I mean had the defendant been found guilty

2    of all counts.

3          MR. KAPLAN:  Without acceptance?

4          PROBATION OFFICER:  Your Honor, under the impact of

5    plea agreement, Paragraph 73, he would have been facing a

6    guideline range of 57 to 71 months and a mandatory consecutive

7    two years.

8          THE COURT:  Okay.  Counsel, I have considered the

9    3553(a) factors in the case.  I note the relatively minor

10   criminal record of the defendant before his involvement in the

11   instant offense, his stable home and family life.  He comes

12   from what was a good and law-abiding family before his family's

13   involvement in this offense.  Until he became involved in the

14   instant offense, it didn't appear that he was any threat to

15   society.

16         I pose those factors against the very serious nature

17   of the offense that brings him before the Court, the very large

18   amount of restitution that is owed, the large number of

19   victims, the intricate scheme that was perpetrated over

20   multiple, multiple victims over a very long period of time.

21         I understand the circumstances that would cause a

22   person to commit a criminal act.  I understand the stress that

23   Mr. Avetyan's family was under because of his wife's illness.

24   But we're not talking about a single instance of theft.  We're

25   talking about an ongoing criminal enterprise that occurred over

many months with daily criminal involvement.  There were many

opportunities for the defendant to turn back, but he never took

advantage of any of those opportunities.  He continued in the

scheme until he was finally apprehended.

I believe that there is a need for a guideline

sentence to promote respect for the law, justly punish,

adequately deter, and reflect the very serious nature of the

defendant's conduct.

Pursuant to the Sentencing Reform Act of 1984, it's

the judgment of the Court on Count 40 that the defendant,

Alfred Avetyan, is hereby committed to the custody of the

Bureau of Prisons to be imprisoned for a term of 60 months.

Pursuant to Count 41, the defendant shall forfeit to

the United States his interest in all monies and properties

listed in the indictment.  It's ordered that the defendant pay

to the Clerk, U.S. District Court, a special assessment of $100

due immediately.

The Court finds that the defendant does not have the

ability to pay a fine, but he shall make restitution in the

amount of $1,118,723.26 on a pro rata basis payable to the

Clerk, U.S. District Court, for disbursement to the victims

listed in Exhibit B of the presentence report.

Restitution is to be paid jointly and severally with

restitution to be imposed in the cases of Rubik Avetyan,

CR-09-217-01, and Allen Avetyan, CR-09-217-02.  The victim's

recovery is limited to the amount of their loss and to the

defendant's liability, for restitution ceases when the victims

receive full restitution.  The payment of interest is waived.

During the term of imprisonment, the restitution is

payable every three months in an amount after a telephone

allowance equal to 50 percent of the funds deposited into the

defendant's inmate trust fund account.

In the event that restitution is not paid in full

prior to the commencement of supervised release, the defendant

shall, as a condition of supervised release, satisfy the amount

due in monthly installments of no less than $300 to commence 30

days after release from confinement.

On release from imprisonment, the defendant shall be

placed on supervised release for a term of three years.  Within

72 hours of his release, the defendant shall report in person

to the probation office in the district to which he is

released.

While on supervised release, the defendant shall not

commit any federal, state, or local crime and shall not possess

a dangerous weapon.

The defendant shall comply with the standard

conditions that have been adopted by this Court and with the

following additional conditions:

The defendant shall not incur new credit charges or

open additional lines of credit without the approval of the

1   probation officer unless the defendant is in compliance with

2   the installment schedule for payment of restitution, fines, or

3   special assessment.  The defendant shall provide the probation

4   officer with access to any requested financial information, and

5   the defendant shall cooperate in the collection of a DNA sample

6   as directed by the probation officer unless a sample is

7   collected during imprisonment.

8          The Court finds that the defendant poses a low risk of

9   future substance abuse and therefore suspends the mandatory

10  drug testing requirement.

11         Does the Government agree to voluntary surrender?

12         MS. PHILLIPS:  Yes, Your Honor.

13         THE COURT:  Ms. Cihak, do you have a date for

14  surrender?

15         COURTROOM DEPUTY:  March 28th, 2011.

16         THE COURT:  It's further ordered that the defendant,

17  Alfred Avetyan, surrender at the institution designated by the

18  Bureau of Prisons before 2:00 p.m. on March 28th, 2011.  The

19  defendant is to contact the U.S. Marshals Office no later than

20  three days prior to the above date to be notified of his place

21  of confinement.

22         It's my determination that the sentence imposed is

23  sufficient but not greater than necessary to comply with the

24  purposes set forth in 18 U.S.C. 3553(a)(2).  I note that I've

25  considered all seven factors set forth in that statute.

Recognizing that the guidelines and policy statements and amendments referenced in 18 U.S.C. 3553(a)(4) and (5) are advisory only, the Court finds their application in this case reasonable and appropriate under the totality of the circumstances.

Mr. Avetyan, in the normal case you would have the right to appeal your conviction if you believed that your guilty plea was somehow unlawful or involuntary or that there was some other fundamental defect in the proceedings that you did not waive by entering a guilty plea.  Normally you also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.

However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement that waives your rights under 18 U.S.C. 3742 or on any other grounds, and you have waived your right to challenge any sentence or the manner in which the sentence was determined in any collateral proceeding, including, but not limited to, a motion under 28 U.S.C. 2255.  These waivers are usually enforceable, but if you believe the waiver you executed is not enforceable, you can present your theory to the appellate court.

With very few exceptions, any Notice of Appeal must be filed within ten days after sentence is imposed on you.  If

1  you're not able to pay the costs of an appeal, you may ask the
2  Court for leave to appeal in forma pauperis, and if you so
3  request, the Clerk of Court will prepare and file a Notice of
4  Appeal on your behalf.

5          Counsel, is there anything else for the record in this
6  matter?

7          MR. KAPLAN:  Yes.  I would ask that you recommend a
8  prison -- I mean a confinement in the Southern California area.
9  I understand the BOP is going to do what the BOP does, but a
10 recommendation often helps.

11         THE COURT:  I will make that recommendation.

12         MR. KAPLAN:  Because his family resides there.

13         THE COURT:  Anywhere in Southern California?

14         MR. KAPLAN:  Yes.  And, secondly, I would ask that the
15 Court allow the BOP to consider the alcohol program because he
16 was using alcohol at the time.

17         THE COURT:  Counsel, is there any basis for an alcohol
18 commitment?

19         MS. PHILLIPS:  Not that I was aware of, Your Honor.

20         MR. KAPLAN:  It says he's using alcohol.  It says he
21 only uses it -- not beyond moderation, but one might note that
22 it does say he's using alcohol.

23         THE COURT:  He consumes it sporadically.  I don't know
24 that there's any basis for ordering treatment.

25         PROBATION OFFICER:  The only information I have is the

1    sporadic alcohol use.  If the defendant feels that -- once he's

2    in the custody of the Bureau of Prisons, I'm sure he can ask

3    for treatment through his case manager, and they can, at that

4    time, discern --

5              THE COURT:  Okay.

6              MR. KAPLAN:  All right.  Thank you, Your Honor.

7              THE COURT:  All right, Counsel, thank you.

8              MS. PHILLIPS:  Thank you, Your Honor.

9              MR. KAPLAN:  My last question, because we do this in

10   LA, and maybe I'm being a little bit pessimistic, but if they

11   don't designate by March 28th at 2 o'clock, rather than having

12   him fly over here, is there somewhere he's supposed to

13   surrender?  What do we do about that?  Because they haven't

14   been designating in 30 days in LA, but they may be doing it out

15   here in Harrisburg.  I don't know.

16             THE COURT:  Counsel, do you know how quickly the

17   designation will be made?

18             MS. PHILLIPS:  I am unaware, Your Honor.  Your Honor,

19   the marshals have requested that the Avetyans be processed

20   after our hearing today.  I am unaware of the time it takes for

21   the designation, Your Honor.  It's not something that has

22   arisen in my prior cases.

23             PROBATION OFFICER:  Your Honor, recently it appears

24   they have been designating in a timely fashion.  However, in

25   the past, if they're not designated, sometimes motions have

1   been filed requesting extensions or that the individual turn

2   themselves in to the local marshals.

3        THE COURT:  I agree with you that it wouldn't make any

4   sense to have your client turn himself in here only to be

5   shipped to California at a later date.  I'll have Ms. Cihak

6   check with the marshals service and see what we can find out.

7   If we need to adjust the date, I'm happy to do that.

8        MR. KAPLAN:  All right.  And if I need to file a

9   motion, may I do so ex parte?  I mean, I will give notice to

10   the Government, but I'd rather not have to fly here.

11        THE COURT:  Of course, no.

12        MR. KAPLAN:  Not that I don't love your city, but it's

13   a long trip.  Thank you very much, Your Honor.

14        MS. PHILLIPS:  Thank you, Your Honor.  Your Honor, the

15   Government respectfully moves to dismiss the remaining counts

16   in the indictment.

17        THE COURT:  Motion granted --

18        MS. PHILLIPS:  Thank you, Your Honor.

19        THE COURT:  -- as to Alfred Avetyan.

20        MS. PHILLIPS:  Yes, Your Honor.  Allen.

21        COURTROOM DEPUTY:  Allen Avetyan, if you would come

22   forward, please.

23        MR. BERK:  Good morning, Your Honor.

24        THE COURT:  Good morning.

25        MR. BERK:  May we approach?

1    THE COURT:  Yes.

2    DEFENDANT ALLEN AVETYAN:  Good morning, Your Honor.

3    THE COURT:  Good morning.  Ms. Phillips.

4    MS. PHILLIPS:  Thank you, Your Honor.  We're here in

5 the companion case of the previous, the United States of

6 America versus Allen Avetyan, Docket Number 1:CR-09-217-02.

7 This is the date and time set for the sentencing hearing in the

8 matter.

9        The objections are actually not only similar,

10 consistent with the prior objections that have been raised by

11 the brother and co-conspirator, Alfred Avetyan.  I believe with

12 respect to the number of victims, counsel, prior to today's

13 hearing, reached an agreement that the defendant will not

14 oppose the finding that the number of victims was greater than

15 50, and therefore the applicable enhancement of four levels

16 should be applied.

17        There is also an outstanding issue with respect to the

18 loss amount, and the Government's position remains the same,

19 that we will honor the terms of the agreement that we made.

20 However, the defendant is aware, based on the terms of the plea

21 agreement, that the Court is not bound by that agreement.

22        And with respect to sophisticated means, our position

23 remains the same, in that this was not an ordinary, common

24 scheme or plan.  Although double-brokering may be somewhat

25 common in the industry, the great lengths at which the

1    defendants went to conceal their location, their identities,

2    and additional identifying factors I believe makes it and the

3    Government submits makes it a sophisticated means in the use of

4    the execution of the scheme.

5            The last objection is that the enhancement for the use

6    of -- unlawful use of identification should apply.  The

7    Government notes that the defendant entered a guilty plea to a

8    conspiracy which includes, under Title 18, Section 1028, an

9    aggravated identity theft, and I believe that speaks directly

10   to the issue of the objection.  And, accordingly, the

11   Government requests that that enhancement be applied, also.

12           THE COURT:  All right.  Is it Mr. Berk?

13           MR. BERK:  Yes, Your Honor.  Good morning.  Well, Your

14   Honor, in light of the Court's previous ruling a few moments

15   ago, obviously we'll waive those objections, Your Honor.  And

16   we do stipulate to the more than 50 victims as previously

17   discussed.

18           THE COURT:  All right.  Is there anything you want to

19   offer on your client's behalf?

20           MR. BERK:  Well, Your Honor, Your Honor has seen that

21   there is some criminal history that my client has had, mostly

22   minor misdemeanor offenses, one involving marijuana.  Along

23   with the letters from Mr. Avetyan's wife, you can see that

24   Mr. Avetyan has had some history with drug abuse and alcohol

25   abuse.

In addition to that, I just want to note to the Court that Mr. Avetyan did not graduate high school, did attempt to receive a GED but never was successful. And having said all that, he's always worked hard, with his family and without, to support his wife, to purchase a home, have some assets, as the Government mentioned.

And like I said, his prior criminal history I don't think suggests a prior history of fraud or any type of criminal activity like that, it's mostly drug related and minor misdemeanors. And, in fact, I represented him on one of the cases where it's unlawful discharge of a firearm. Your Honor, that is a BB gun. It's not necessarily the same as you would think just by the title of the offense. And it was in his own backyard.

Your Honor, Mr. Avetyan is a good person. He does come from a good family. As Mr. Kaplan previously described, they're a tight-knit family that looks out for each other. And they ran into some hard times, both financially, emotionally, and they strayed down the wrong path, Your Honor.

Unfortunately, this is a crime that is a very serious crime, and Mr. Avetyan understands the seriousness of this crime, and he understands that there has to be adequate deterrence and he needs to serve an adequate amount of time in custody.

And having heard the previous ruling, Your Honor, I'll

1 be brief, and I'd let Mr. Avetyan actually tell the Court how

2 he feels about this, if the Court wouldn't mind.

3    THE COURT:  Mr. Avetyan.

4    DEFENDANT ALLEN AVETYAN:  Your Honor, I want to

5 apologize to all the victims, number one, and I want to

6 apologize to the Court for wasting their time on my behalf.

7 And I want to say since this has happened in my life, I've made

8 a lot of changes, big changes towards my family.  And I

9 understand not everything is money related when you have values

10 and family to compare it to.  And I've changed a lot and just

11 want to serve the time and get it over with and take care of

12 the restitution.  I'm sorry.

13    THE COURT:  Thank you.  Counsel.

14    MS. PHILLIPS:  Your Honor, without reiterating the

15 argument with respect to the seriousness of the crime, I'd ask

16 the Court to note my previous argument with respect to the

17 impact that this has had on individual owners of trucks, as

18 well as trucking companies who are, in many cases, very small

19 companies who suffered a great loss as a result of Mr. Avetyan

20 and his co-defendants.

21    I do note, however, with respect to the 3553 factors

22 that one factor that I believe is paramount in the Court's

23 decision in this case is the defendant's criminal history.

24 Based on my review of the PSR, Mr. Avetyan's fraud, fraudulent

25 behavior, does actually date back to 1998 at age 21.  The facts

1   state that he was using a forged document at the Great Western

2   Bank.  And I believe that was in California.

3       Additionally, he has had many, many, many contacts

4   with law enforcement, and although I certainly would hope that

5   this would be the last one, it seems that he comes before the

6   Court a much different criminal history and a defendant with

7   much different characteristics than the previous defendant.

8   And, again, the Government would respectfully request that you

9   sentence the defendant to the statutory maximum of 60 months.

10      THE COURT:  All right.  I have considered the 3553(a)

11  factors.  I think that Mr. Allen Avetyan does stand differently

12  before the Court.

13      In a way, the items that make him different really

14  balance out.  He does have a more significant criminal history,

15  but at the same time he obviously has struggled with substance

16  abuse issues and perhaps some learning disabilities that have

17  made it impossible for him to even get a minimal education such

18  that he could make his way in the world a little easier.

19      Nonetheless, those things do not make up for the very

20  serious nature of the offense that brings him before the Court.

21  I know that economic times are tough.  We see a lot of people

22  who come in with a forged check for a thousand dollars or so,

23  but we're not talking about that.  We're talking about a very

24  significant criminal enterprise that has impacted a lot of

25  people who could ill-afford to suffer loss in these economic

times. Everything Mr. Avetyan has said suggests to me that he is aware of that and that this whole event is going to represent a wake-up call for him.

I hope that he is able to get the substance abuse treatment and will participate in substance abuse treatment, because I believe that this really represents a driving force behind the events that bring him before the Court.

I do believe that a guideline range sentence is appropriate and adequate to meet sentencing objectives, including promoting respect for the law, providing just punishment, adequately deterring, and reflecting the very serious nature of the conduct that brings Mr. Avetyan before the Court today.

Pursuant to the Sentencing Reform Act, it's the judgment of the Court on Count 40 that the defendant, Allen Avetyan, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 60 months.

Pursuant to Count 41, the defendant shall forfeit to the United States his interest in all monies and property listed in the indictment.

The Court finds that the defendant does not have the ability to pay a fine, but he shall make restitution in the amount of $1,118,723.26 on a pro rata basis payable to the Clerk, U.S. District Court, for disbursement to the victims listed in Exhibit B of the presentence report.

Restitution is to be paid jointly and severally with restitution to be imposed in the cases of Rubik Avetyan, 1:CR-09-217-01, and Alfred Avetyan, 1:CR-09-217-03. The victims' recovery is limited to the amount of their loss, and the defendant's liability for restitution ceases when the victims receive full restitution. Payment of interest is waived.

During the term of imprisonment, the restitution is payable every three months in an amount after a telephone allowance equal to 50 percent of the funds deposited into the defendant's inmate trust fund account.

In the event the restitution is not paid in full prior to the commencement of supervised release, the defendant shall, as a condition of supervised release, satisfy the amount due in monthly installments of no less than $300 to commence 30 days after his release from confinement.

On release from imprisonment, the defendant shall be placed on supervised release for a term of three years. Within 72 hours of release, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, the defendant shall not commit any federal, state, or local crimes and shall not possess a dangerous weapon.

The defendant shall comply with the standard conditions that have been adopted by this Court and to the

following additional conditions:

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment schedule for payment of restitution, fines, or special assessment.

The defendant shall provide the probation officer with access to any requested financial information. The defendant shall cooperate in the collection of a DNA sample as directed by the probation officer unless a sample is collected during imprisonment, and, if deported, the defendant shall not reenter the United States and supervision will be on a nonreporting basis.

The Court finds that the defendant poses a low risk of future substance abuse and therefore suspends the mandatory drug testing requirement.

It's further ordered that the defendant, Allen Avetyan, surrender at the institution designated by the Bureau of Prisons before 2:00 p.m. on March 28th, 2011. The defendant is to contact the U.S. Marshals Office no later than three days prior to this date to be notified of his place of confinement.

It's my determination that the sentence imposed is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. 3553(a)(2). I note that I've considered all seven factors set forth in 18 U.S.C. 3553(a).

Recognizing that the guidelines and policy statements and amendments to the same referenced in 18 U.S.C. 3553(a)(4) and (5) are advisory only, the Court finds their application in this case reasonable and appropriate under the totality of the circumstances.

Mr. Avetyan, normally you do have a right to appeal your conviction if you believe that your guilty plea is somehow unlawful or involuntary or if you think there's some other fundamental defect in the proceedings that you didn't waive by entering a guilty plea. Normally you would also have a statutory right to appeal your sentence, particularly if you think the sentence I impose on you is contrary to law.

However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement that waives your right to appeal under 18 U.S.C. 3742 on any grounds, and you've waived your right to challenge the sentence or the manner in which the sentence was determined in any collateral proceeding, including, but not limited to, a motion under 28 U.S.C. 2255. These waivers are usually enforceable, but if you believe that in your case the waiver you executed is unenforceable, you are entitled to present that theory to the appellate court.

With few exceptions, any Notice of Appeal must be filed within 14 days after sentence is imposed on you. If you're not able to pay the costs of an appeal, you could ask

this Court for leave to appeal in forma pauperis and you could
ask that the Clerk of Court prepare and file a Notice of Appeal
on your behalf.

      Counsel, is there anything else for the record?

      MR. BERK:  Yes, Your Honor, if we could have a
Southern California commitment, I wasn't sure if the Court
mentioned that, and the recommendation to a drug and alcohol
rehabilitation program.

      THE COURT:  Yes, I'll make both of those
recommendations.

      MR. BERK:  Thank you, Your Honor.

      THE COURT:  Counsel, is there a motion on the original
indictment?

      MS. PHILLIPS:  Yes, Your Honor.  The Government moves
to dismiss the remaining counts in the indictment of United
States versus Allen Avetyan.  And also, Your Honor, we request
the Court order the defendant to appear at the U.S. Marshals
Service for processing prior to leaving today.

      THE COURT:  All right.

      MR. BERK:  Your Honor, one more thing.  If the
defendant is currently under electronic monitoring and he's got
some business he has to take care of before surrendering, if he
could have a greater -- a little bit more free time, not to
remove the monitor, but right now he's basically at home the
whole time and he just wants to make sure that his wife

1    basically doesn't have to deal with certain issues, whether

2    it's business related, whatever it is.

3           If he could just, between, let's say, 8:00 in the

4    morning and 5:00 in the evening until the time of surrender, be

5    able to just leave the house freely in order to take care of

6    that business prior to his commitment.

7           THE COURT:  Ms. Bard, as I understand it, the

8    probation office in California is monitoring this, are they

9    not?

10          PROBATION OFFICER:  That is correct, Your Honor.

11          THE COURT:  All right.  I would leave that to the

12    probation office in California to make arrangements for him.

13    I'm sure that his conditions of release are home confinement,

14    with the exception -- with certain exceptions unless permission

15    is granted by the probation office.

16          So if the probation office out there feels that they

17    can adequately monitor him and that he demonstrates to them a

18    valid need to be elsewhere other than home, I don't have a

19    problem with that.

20          MR. BERK:  I will look into that, Your Honor.  Thank

21    you.

22          THE COURT:  Okay.

23          MS. PHILLIPS:  Thank you, Your Honor.

24          DEFENDANT ALLEN AVETYAN:  Thank you, Your Honor.

25          THE COURT:  We need one more defendant and an

1  interpreter.

2       MS. PHILLIPS:  Yes, Your Honor.

3       THE COURT:  But I believe the interpreter is on the

4  train from New York.  Mr. Kaplan, are you covering that?

5       MR. KAPLAN:  I am, and I did file a conflict waiver

6  with the Court.

7       THE COURT:  All right.  We'll be in recess.

8    (Recess taken.)

9       THE COURT:  Counsel, approach.  Ms. Phillips.

10       MS. PHILLIPS:  Thank you, Your Honor.  We're here

11  today in the matter of the United States of America versus

12  Rubik Avetyan.  Mr. Avetyan is also a companion case to Alfred

13  and Allen Avetyan.  He is docketed to Criminal Number -- Docket

14  Number 1:CR-09-217-01.  He's here today before the Court for

15  his sentencing hearing.

16       I believe that we have, at this point, most likely

17  dispelled with the objections previously raised by, at the

18  time, Attorney Fasen, who is being represented by Attorney

19  Kaplan for today's purposes.  The two objections that were

20  raised, again, were the loss amount and the enhancement for

21  victims which was previously discussed and resolved prior to

22  today's sentencing hearing.

23       THE COURT:  All right.  Before we proceed further, I'm

24  going to ask the deputy clerk to swear in the interpreter who

25  has joined us.

1      (Interpreter sworn.)

2          THE COURT:  Thank you.

3          THE INTERPRETER:  Good morning, Your Honor.

4          THE COURT:  Good morning.  Mr. Kaplan.

5          MR. KAPLAN:  Yes.  Number one, having -- I dispel with

6  the objections having heard your previous rulings in the other

7  two.  I think it would be inconsistent if you would find

8  something different on this one, and I would suggest that you

9  probably be consistent.  I'll submit as to the objections.

10        THE COURT:  All right.  Thank you.  And I'm sure you

11  agree that we're working with an offense level 27 and a

12  criminal history category one, making for a guideline range of

13  60 months, the statutory maximum.

14        MR. KAPLAN:  Correct.

15        THE COURT:  Is there anything you want to offer on

16  Mr. Avetyan's behalf?

17        MR. KAPLAN:  Well, let me address the 3553(a) factors,

18  even though I've addressed them previously and haven't quite

19  busted down the door.

20        But assuming -- and not that I want to take this

21  Court's time, but now we have the father who really doesn't

22  speak English and who really was -- who went along with the

23  children, actually went along with Allen.  And because of his

24  age and because of his lack of English and his lack of ability

25  to deal with all the items, he's in somewhat of a different

1     position than the two children.

2           Having said that, having heard your previous rulings,

3     I would -- and understanding that -- I think the Court needs to

4     understand he doesn't speak English, all these transactions

5     occurred in English, and that he did have a minor role compared

6     to the two sons, though he appears to be equally culpable.  He

7     admits his guilt.

8           We also are looking at a family with the entire three

9     males' ability to earn money being put away at the same time.

10     I don't know how to address that, though I've addressed it in

11     other areas by deferring sentences for a year or two while the

12     other people are doing their time.  I'm not sure this Court is

13     inclined to do that.  And I understand that's an unusual

14     circumstance, though I might be asking the Court that that

15     might be an avenue the Court might want to go down, allowing

16     him to control the family.

17           I might also note for all the reasons you stated for

18     Alfred, that he was clean all his young life, this man has a

19     lot longer track record of being, you know, clean and being a

20     hard worker.  And five years on a man his age, my age, seems to

21     be a lot more time than the five years on a man of 30.  One

22     might not think that, but as I get older, it seems more

23     valuable to me.

24           And for those reasons, I'd again ask the Court to

25     consider reducing the 60 months to something under that, and

1   I'm again suggesting 30 months, and I'm suggesting that you

2   defer this for two years so that he can maintain the family

3   while his sons are behind bars.

4           THE COURT:  All right.  Before I hear from your

5   client, I want to explore something that you've represented,

6   and that is that Mr. Avetyan does not speak English.  It's my

7   understanding that there was not an interpreter present when he

8   entered a guilty plea.  Is that right?

9           MS. PHILLIPS:  That's correct, Your Honor.  During the

10  initial appearance before Magistrate Smyser, as well as the

11  change of plea hearing, I believe the issue was addressed and

12  it was decided, based on representations from counsel, that an

13  interpreter was not needed.

14          MR. KAPLAN:  It wasn't -- let me put it this way, his

15  English isn't great, but his sons were there to help him out

16  with the language.  And I still think the Court should accept

17  the plea because we went over with him in that language prior

18  to him ever getting into court.  And, I mean, he does speak

19  some English, but it's not wonderful.  If you're suggesting

20  that we need to redo the plea, I'm suggesting that's not a

21  necessity.

22          THE COURT:  The thought has occurred to me.

23          MR. KAPLAN:  And I'm suggesting that's not a

24  necessity.  He accepts responsibility for his acts.  And I

25  might note I was present when he went through the entire plea

1   agreement with his sons and with an interpreter at my office.
2   Leo happens to have a suite in my office.  That's why I was
3   there.
4           THE COURT:  Okay.  Mr. Avetyan, do you understand why
5   you're here today?
6           DEFENDANT RUBRIK AVETYAN:  Yes.
7           THE COURT:  You're going to be sentenced today based
8   on a guilty plea that you entered previously before Judge
9   Smyser.
10          DEFENDANT RUBRIK AVETYAN:  Yes.
11          THE COURT:  Before I can go forward with sentencing, I
12  need to be sure that you understand the transaction that
13  occurred in front of Judge Smyser.
14          DEFENDANT RUBRIK AVETYAN:  Yes.
15          THE COURT:  Did someone assist you at that time?
16          DEFENDANT RUBRIK AVETYAN:  My sons helped me, and they
17  told me to say yes, and I said yes.
18          MR. KAPLAN:  Could we have a moment?
19          THE COURT:  Yes.
20          MR. KAPLAN:  You understood you were pleading guilty?
21          DEFENDANT RUBRIK AVETYAN:  But I did understand my
22  plea.
23          MR. KAPLAN:  You understood your plea and pled guilty?
24          DEFENDANT RUBRIK AVETYAN:  Yes.
25          MR. KAPLAN:  And you understood you pled guilty

because, in fact, you did the acts they said you did.  Correct?

DEFENDANT RUBRIK AVETYAN:  Yes.

THE COURT:  Did your son explain -- either of your sons explain to you those things that the Judge went over with you regarding your rights?

DEFENDANT RUBRIK AVETYAN:  Yes.

THE COURT:  Did the Judge explain to you that you were not required to have a plea agreement with the Government or enter a guilty plea to any charge?

DEFENDANT RUBRIK AVETYAN:  Yes.

THE COURT:  Did you understand, when you entered a guilty plea, that you would be giving up your right to a jury trial in this matter?

DEFENDANT RUBRIK AVETYAN:  Yes.

THE COURT:  Was it explained to you that in the matter that brings you before the Court, you would be entitled to plead not guilty and ask the Court for a trial before a jury of 12 persons?

DEFENDANT RUBRIK AVETYAN:  Yes.

THE COURT:  And did the Judge explain that if you exercised that right, the Government would have to prove all of the charges against you beyond a reasonable doubt?

DEFENDANT RUBRIK AVETYAN:  Yes.

THE COURT:  Did you understand that you couldn't be required to produce evidence or give any testimony if you went

1   to trial in the case?

2         DEFENDANT RUBRIK AVETYAN:  Yes.

3         THE COURT:  Did anybody threaten, coerce you, or make

4   any promises to you to get you to plead guilty?

5         DEFENDANT RUBRIK AVETYAN:  No.

6         THE COURT:  It was your own free will then?

7         DEFENDANT RUBRIK AVETYAN:  Yes.

8         THE COURT:  Is it still your desire to stand by your

9   guilty plea and go forward in the case with sentencing?

10         DEFENDANT RUBRIK AVETYAN:  Yes.

11         THE COURT:  Do you understand that there will be no

12   trial in your case?

13         DEFENDANT RUBRIK AVETYAN:  Yes.

14         THE COURT:  And that this Court will accept your plea

15   of guilty and then go forward to sentence you?

16         DEFENDANT RUBRIK AVETYAN:  Yes.

17         THE COURT:  Is that how you wish to proceed?

18         DEFENDANT RUBRIK AVETYAN:  Yes.

19         THE COURT:  Do you have any questions about anything

20   that has occurred before today or about anything that is going

21   to happen now?

22         DEFENDANT RUBRIK AVETYAN:  Like what?  I want to

23   apologize to the Court for the actions that I have taken.

24         THE COURT:  All right.

25         MR. KAPLAN:  I think the answer is no, Your Honor,

1   when someone suggests they want to apologize to the Court.

2           THE COURT:  Okay.  So is it your desire to stand by

3   your guilty plea in this matter and be sentenced?

4           DEFENDANT RUBRIK AVETYAN:  Yes.

5           THE COURT:  Do you understand that in the plea

6   agreement that you signed with the Government, you have waived

7   all of your rights to appeal the sentence that I impose on you?

8           DEFENDANT RUBRIK AVETYAN:  Yes.

9           THE COURT:  So this will be your final court hearing

10  if you decide to go forward now.

11          DEFENDANT RUBRIK AVETYAN:  Yes.

12          THE COURT:  All right.  Is there anything you want to

13  say on your behalf before I decide what your sentence should

14  be?

15          DEFENDANT RUBRIK AVETYAN:  It was a mistake on my part

16  and I apologize to the Court and I'm sorry.  I'm sorry that I

17  did this.  I ask everyone's forgiveness.

18          MR. KAPLAN:  I think his emotions, though not conveyed

19  by the interpreter, one can see it on his face.

20          THE COURT:  All right.  Thank you.  Counsel.

21          MS. PHILLIPS:  Your Honor, the Government respectfully

22  requests a sentence to the statutory maximum of 60 months for

23  the reasons previously argued on behalf of Alfred Avetyan and

24  Allen Avetyan, and I believe for the sake of fairness and based

25  on the facts of the case, this was a joint venture between

father and two sons, and we would ask for a similar sentence.

THE COURT: Is there anything to suggest that Mr. Avetyan is less culpable than his sons?

MS. PHILLIPS: I don't believe so, Your Honor.

MR. KAPLAN: Are you asking both of us or only the Government?

THE COURT: I asked the Government, but I'll hear anything you want to say on that.

MR. KAPLAN: I think there's ample evidence to suggest that this kind of scheme could not have been hammered out by the father, that he was in no way having the sophistication that -- to even understand what the scheme was. You found it to be a sophisticated scheme. This is not a sophisticated man. This guy just went along with it.

I mean, you could see from the probation report, you could see from his background, he is a very unsophisticated man, and this is a very -- it took me four times to read the discovery to figure out what occurred, let alone him trying to devise a scheme that used Internet, used identities, used items that he was unfamiliar with.

There is absolutely no doubt in my mind, if you take a look at both the sophistication of the scheme, the devices used to hammer out the scheme, and the methodology, that this gentleman has to be less culpable than his sons. Common sense tells us that.

1          MS. PHILLIPS:  Respectfully, Your Honor, may I

2     respond?

3          THE COURT:  Yes.

4          MS. PHILLIPS:  To the extent that Mr. Avetyan is or is

5     not sophisticated with respect to accounts or technology,

6     there's nothing to say that he is not.  I think the

7     overwhelming factor in this case is that this is a family

8     criminal enterprise.  The family is so tightly knit.  They have

9     their homes in other people's names.  They are doing this, they

10    say, for the -- to support the treatment of the other family

11    member.

12          But, most importantly, Mr. Avetyan, I believe, has

13    been in the trucking business for some time.  I believe his

14    trucking business dates back -- his prior business, trucking,

15    and I believe his employment history takes him back.  It's the

16    only type of work he's done.  He is the person with the

17    knowledge of the industry.  And his knowledge, I believe, would

18    predate his children's maturity.

19          At this point his children are engaging in activity

20    with him and along with him.  They all played a different role.

21    Mr. Avetyan, I believe, was one of the people who played a very

22    paramount role in that although he may not be technologically

23    sophisticated, I believe he, as the father and the head of the

24    family, maintains a similar role in the enterprise.

25          MR. KAPLAN:  That's a jump in logic from saying that

1  he maintains a role of -- as the head of the family, even

2  though he has no technological skills when this is a

3  technological scam.  I mean, the fact that he was a truck

4  driver, his sons were sort of in the biz, they knew the gig,

5  but, I mean, there's no suggestion this guy had any ability to

6  figure this thing out.

7       MS. PHILLIPS:  There's no suggestion he didn't, Your

8  Honor.  He's been in the business since 1990.

9       THE COURT:  All right.  Thank you, Counsel.  I've

10  considered the 3553(a) factors in this case, Mr. Avetyan's very

11  long law-abiding history, his difficult circumstances in coming

12  to this country and literally working his way up from the back

13  of a truck to a successful trucking venture and, unfortunately,

14  later a successful criminal enterprise.

15       I weigh his law-abiding history and his very

16  industrious nature against the serious offense that brings him

17  before the Court and the very substantial losses that the

18  victims have suffered.

19       It's very difficult with three defendants to parse out

20  who did what, but I do feel that Mr. Avetyan deserves some

21  consideration given his age and his lack of significant

22  history, criminal history, before involving himself in what was

23  a ten-month or more criminal venture involving both of his

24  sons.

25       I feel that a sentence somewhat below the guideline

1    range is adequate to meet sentencing objectives, protect the

2    public, promote respect for the law, provide just punishment,

3    and adequately deter the defendant from future criminal

4    conduct.

5            Pursuant to the Sentencing Reform Act of 1984, it's

6    the judgment of the Court on Count 40 that the defendant, Rubik

7    Avetyan, is hereby committed to the custody of the Bureau of

8    Prisons to be imprisoned for a term of 50 months.

9            Pursuant to Count 41, the defendant shall forfeit to

10   the United States his interest in all monies and properties

11   listed in the indictment.

12           MR. KAPLAN:  We're having a breakdown in the

13   communication.  Can we stop for a second so he can catch up?

14           THE COURT:  Of course.  Pursuant to Count 41, the

15   defendant shall forfeit to the United States his interest in

16   all monies and properties listed in the indictment.

17           It's ordered that the defendant pay to the Clerk, U.S.

18   District Court, a special assessment of $100 due immediately.

19           DEFENDANT RUBRIK AVETYAN:  Yes.

20           THE COURT:  The Court finds that the defendant does

21   not have the ability to pay a fine.  He shall make restitution

22   in the amount of $1,118,723.26.

23           THE INTERPRETER:  One million, one hundred eighteen

24   thousand --

25           THE COURT:  18,723.26.

1      MR. KAPLAN:  It must be hard to get the numbers in

2  that language.

3      THE INTERPRETER:  Yes.

4      THE COURT:  The amount is payable to the Clerk, United

5  States District Court, for disbursement to the victims listed

6  in the presentence report.

7      DEFENDANT RUBRIK AVETYAN:  Yes.

8      THE COURT:  Do you have a written copy of the

9  disposition you could provide to the interpreter?  It might

10  help him.

11      THE INTERPRETER:  Thank you, Your Honor.

12      THE COURT:  Restitution is to be paid jointly and

13  severally with restitution to be ordered in case 1:CR-09-217-02

14  and 1:CR-09-217-03.

15      DEFENDANT RUBRIK AVETYAN:  Yes.

16      THE COURT:  No further payment will be required after

17  the sum of the amounts actually paid by all defendants have

18  fully covered the compensable losses.

19      DEFENDANT RUBRIK AVETYAN:  Yes.

20      THE COURT:  Payment of interest is waived.

21      DEFENDANT RUBRIK AVETYAN:  Yes.

22      THE COURT:  During the term of imprisonment, the

23  restitution is payable every three months in an amount after a

24  telephone allowance equal to 50 percent of the funds deposited

25  into the defendant's inmate trust fund account.

1     DEFENDANT RUBRIK AVETYAN:  Yes.

2     THE COURT:  In the event the restitution is not paid

3  in full prior to the commencement of supervised release, the

4  defendant shall, as a condition of supervised release, satisfy

5  the amount due in monthly installments of no less than $100 to

6  commence 30 days after release from confinement.

7     DEFENDANT RUBRIK AVETYAN:  Yes.

8     THE COURT:  On release from imprisonment, the

9  defendant shall be placed on supervised release for a term of

10  three years.

11     DEFENDANT RUBRIK AVETYAN:  Yes.

12     THE COURT:  Within 72 hours of release from custody,

13  the defendant shall report in person to the probation office in

14  the district to which he is released.

15     DEFENDANT RUBRIK AVETYAN:  Yes.

16     THE COURT:  While on supervised release, the defendant

17  shall not commit another federal, state, or local crime and

18  shall not possess a dangerous weapon.

19     DEFENDANT RUBRIK AVETYAN:  Yes.

20     THE COURT:  The defendant shall comply with the

21  standard conditions adopted by the Court and with the following

22  additional conditions:

23     DEFENDANT RUBRIK AVETYAN:  Yes.

24     THE COURT:  The defendant shall cooperate in the

25  collection of a DNA sample as directed by the probation officer

1    unless a sample was collected during imprisonment.

2              DEFENDANT RUBRIK AVETYAN:  Yes.

3              THE COURT:  The defendant shall not incur new credit

4    charges or open additional lines of credit without the approval

5    of the probation officer unless the defendant is in compliance

6    with the installment schedule for payment of restitution.

7              DEFENDANT RUBRIK AVETYAN:  Yes.

8              THE COURT:  The defendant shall provide the probation

9    officer with access to any requested financial information.

10             DEFENDANT RUBRIK AVETYAN:  Yes.

11             THE COURT:  If deported, the defendant shall not

12   reenter the United States and supervision shall be on a

13   nonreporting basis.

14             DEFENDANT RUBRIK AVETYAN:  Yes.

15             THE COURT:  The Court finds that the defendant poses a

16   low risk of future substance abuse and therefore suspends the

17   mandatory drug testing requirement.

18             DEFENDANT RUBRIK AVETYAN:  Yes.

19             THE COURT:  It is my determination that the sentence

20   imposed is sufficient but not greater than necessary to comply

21   with the provisions of 18 U.S.C. 3553(a)(2).  I note that I've

22   considered all seven factors set forth in 18 U.S.C. 3553(a).

23             Recognizing that the guidelines, policy statements,

24   and amendments to the same are advisory only, the Court finds

25   their application in the case reasonable and appropriate under

1    the totality of circumstances.

2          It's ordered that the defendant, Rubik Avetyan,

3    surrender at the institution designated by the Bureau of

4    Prisons before 2:00 p.m. on March 28th, 2011.

5          THE INTERPRETER:  28?

6          MR. KAPLAN:  March 28.

7          DEFENDANT RUBRIK AVETYAN:  Yes.

8          THE COURT:  The defendant is to contact the U.S.

9    Marshals Office no later than three days prior to the above

10    date to be notified of his place of confinement.

11          DEFENDANT RUBRIK AVETYAN:  Yes.

12          THE COURT:  Mr. Avetyan, normally you would have the

13    right to appeal your conviction if you believed that your

14    guilty plea was somehow unlawful or involuntary or if you think

15    there was some fundamental defect in these proceedings that you

16    did not waive by entering a guilty plea.

17          DEFENDANT RUBRIK AVETYAN:  Yes.

18          THE COURT:  Normally you would have a statutory right

19    to appeal your sentence under certain circumstances,

20    particularly if you think the sentence I now impose on you is

21    contrary to law.

22          DEFENDANT RUBRIK AVETYAN:  Yes.

23          THE COURT:  However, a defendant may waive those

24    rights as part of a plea agreement, and you have entered into a

25    plea agreement that waives some or all of your rights to appeal

1   your conviction and/or your sentence.

2           DEFENDANT RUBRIK AVETYAN:  Yes.

3           THE COURT:  These waivers are usually enforceable, but

4   if you believe that the waiver you executed in this case is

5   unenforceable, you have a right to present that theory to the

6   appellate court.

7           DEFENDANT RUBRIK AVETYAN:  Yes.

8           THE COURT:  With very few exceptions, any Notice of

9   Appeal must be filed within 14 days after sentence is imposed

10  on you.  If you're not able to pay the costs of an appeal, you

11  could ask this Court for leave to appeal in forma pauperis and

12  you could ask that the Clerk of Court prepare and file a Notice

13  of Appeal on your behalf.

14          DEFENDANT RUBRIK AVETYAN:  Yes.

15          THE COURT:  Counsel, is there anything else for the

16  record?

17          MR. KAPLAN:  Yes.  I would ask that he be recommended

18  to be in the Southern California setting, corrections setting,

19  and secondly that, again, he be -- it does say he used alcohol,

20  not to excess, but still ask that the Court recommend an

21  alcohol program in prison.

22          THE COURT:  I'll recommend that he be assigned to a

23  facility in California.  And does the probation office

24  recommend the 500-hour treatment program?

25          PROBATION OFFICER:  I didn't see anything in his

1    record to indicate that that would be appropriate, but, again,

2    he could speak with the case manager.  It is a voluntary

3    program.  They can look at it at that time.

4            THE COURT:  All right.  I'll leave it to the

5    discretion of the Bureau of Prisons then.  Anything else,

6    Counsel?

7            MS. PHILLIPS:  Yes, Your Honor, the Government

8    respectfully moves for the dismissal of the remaining counts in

9    the indictment against Rubik Avetyan.

10           THE COURT:  Motion granted.  Mr. Kaplan, anything

11   further?

12           MR. KAPLAN:  Nothing.  Thank you very much, Your

13   Honor.

14           THE COURT:  Thank you.

15           MS. PHILLIPS:  Respectfully, Your Honor, the

16   Government asks that you direct the defendant also to report to

17   the U.S. Marshals for processing.

18           THE COURT:  Yes.

19           MS. PHILLIPS:  Thank you.

20           THE COURT:  Mr. Avetyan is also going to be required

21   to report now for processing.  I assume the interpreter will

22   need to go with him.

23           THE INTERPRETER:  Sure.

24           THE COURT:  All right.  Thank you, Counsel.

25           MS. PHILLIPS:  Thank you, Your Honor.

1          MR. KAPLAN:  Thank you, Your Honor.

2          COURTROOM DEPUTY:  Court is adjourned.

3      (Whereupon, the proceedings were concluded at 11:35 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         CERTIFICATION

2              I hereby certify that the proceedings and

3         evidence are contained fully and accurately in

4         the notes taken by me on the within

5         proceedings and that this copy is a correct

6         transcript of the same.

7              Dated in Harrisburg, Pennsylvania, this

8         31st day of May, 2011.

9

10

11                          **/s/ Lori A. Shuey**
                         Lori A. Shuey, RMR, CRR
12                       U.S. Official Court Reporter
                         United States Courthouse
13                       228 Walnut Street, P.O. Box 983
                         Harrisburg, PA  17108-0983
14                       (717)215-1270

15

16

17

18

19

20

21

22

23

24

25